**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**NOT FOR PUBLICATION**

------------------------------------------------------X
:
MARC FRATO,                                           :     Civil Action No.: 10-5198 (ES-CLW)
                                                      :     **OPINION**
           Plaintiff,                                 :
                                                      :
v.                                                    :
                                                      :
                                                      :     **August 17, 2011**
                                                      :
SWING STAGING, INC., et al,                           :
                                                      :
           Defendants.                                :
------------------------------------------------------X

**ESTHER SALAS, UNITED STATES DISTRICT JUDGE:**

## I. INTRODUCTION

Pending before the Court is Defendants Swing Staging, Inc. ("Defendant Swing Staging"), John Pantanelli ("Defendant Pantanelli"), Twin and Swing Scaffolding, Inc. ("Defendant Twin and Swing"), and J.P. Holdings, LLC's (collectively "Defendants") motion to transfer venue to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a). (Docket Entry No. 11, the "Motion" dated February 18, 2011). The Court has reviewed the submissions in support of and in opposition to the Motion, and for the reasons set forth below, the Motion is hereby GRANTED.

## II. BACKGROUND AND PROCEDURAL HISTORY

On October 8, 2010, Plaintiff Marc Frato ("Plaintiff") commenced this diversity action against Defendant Swing Staging, its subsidiary, Defendant Twin and Swing (collectively the

1

"Corporate Defendants"), the Corporate Defendants's president, Defendant Pantanelli, and Defendant J.P. Holdings.[1] (Docket Entry No. 1, the "Complaint"). Defendant Pantanelli is a resident of White Plains, New York, and the Corporate Defendants are both incorporated in New York and are in the business of selling, leasing, and servicing scaffolding and like equipment. (Docket Entry No. 11-2, affidavit of Defendant Pantanelli filed February 18, 2011 (the "Pantanelli Affidavit") at ¶¶ 1, 3-4). Together, the Corporate Defendants employee about 100 people, and conduct two percent of its business in New Jersey. (*Id.* at ¶ 3; Docket Entry No. 14, Reply Affidavit of Defendant Pantanelli dated March 17, 2011("Pantanelli Reply Aff.") at ¶ 5).

Although the parties dispute the specific circumstances that precipitated Plaintiff's dealings with Defendant Swing Staging and its President, Defendant Pantanelli, the parties agree that they met while Plaintiff's former company, Markey Swing and Scaffolding ("Plaintiff's Former Company"), conducted business with Defendant Swing Staging. (Docket Entry No. 13-3, Certification of Marc Frato in Opposition to the Defendants' Motion, dated March 6, 2011 ("Frato Cert.") at ¶ 5). Thereafter, in 1999, Plaintiff Frato entered into three contracts with Defendant Swing Staging. (*See generally* Frato Cert.). First, under the "Asset Purchase Agreement" (the "APA"), Defendant Swing Staging purchased Plaintiff's Former Company's assets. (Complaint at ¶ 17; Docket Entry No. 11-6, Exhibit D attached to the Pantanelli Affidavit, APA). Second, at or around the same time as the parties entered into the APA, on November 3, 2009, Plaintiff entered into an employment contract whereby he would work for Defendant Swing Staging at its Queens, New York office (the

---

[1] Defendant Pantanelli represents to the Court that Defendant J.P. Holdings is not an LLC, but that he uses "'J.P. Holdings in [his] computer tracking of rental income from [his] several commercial properties.'" (Docket Entry No. 11-2, Affidavit of John Pantanelli dated February 2011 (the "Pantanelli Affidavit") at ¶ 1).

"Employment Agreement"). (Complaint at ¶¶ 19, 21-23, 25; Frato Cert. at ¶ 9). Finally, also on November 3, 1999, Plaintiff and Defendant Swing Staging entered into a "Stock Redemption Agreement" (the "SRA"), whereby Plaintiff obtained a 1/32 share of the total outstanding capital stock of Defendant Swing Staging (the "Ownership Interest"). (Complaint at ¶ 20; Frato Cert. at ¶ 9). On May 26, 2008, Plaintiff ceased his employment with Defendant Swing Staging. (Complaint at ¶¶ 25, 38; Frato Cert. at ¶ 15). Thereafter, Plaintiff sought to enforce his rights under the SRA and obtain cash payouts of his Ownership Interest in Defendant Swing Staging; the parties then had a dispute about the valuation of Defendant Swing Staging, which was calculated by Defendant Swing Staging's accountant, Frank Bianculli. (*See generally* Complaint at ¶¶ 32-68).

Plaintiff's complaint alleges that: (1) Defendant Swing Staging breached the terms of the SRA by both diverting assets from Defendant Swing Staging to Defendant Twin and Swing, thereby undervaluing and/or improperly valuing Defendant Swing Staging, and nonpayment to Plaintiff under the SRA (*See* Complaint at First, Second and Ninth Counts (the "Contract Claim")); (2) Defendants breached various duties owed to Plaintiff in connection with the SRA and its corresponding valuation of Defendant Swing Staging (Complaint at Third, Fifth, and Seventh Counts (the "Breach of Duty Claims")); (3) Defendant Pantanelli misrepresented the value of Defendant Swing Staging, and diverted assets from Defendant Swing Staging to Defendant Twin and Swing (Complaint at Sixth Count (the "Fraud/Misrepresentation Claims")); (4) under the theory of quantum meruit, Plaintiff sold his Former Company to Defendant in exchange for employment and with the expectation that he would be compensated in accordance with the SRA (Complaint at Fourth Count, (the "Quantum Meruit Claim")); (5) Plaintiff, under the SRA, is entitled to an accounting of

Defendant Swing Staging to determine the value of his Ownership Interest (Complaint at Eighth Count (the "Accounting Claim")); and (6) Defendant Swing Staging converted Plaintiff's Ownership Interest for its own benefit (Complaint at Tenth Count (the "Conversion Claim")). Defendants have not filed an answer in this action, and instead, on February 18, 2011, filed the instant Motion to transfer venue to the Eastern District of New York. On March 7, 2011, Plaintiff filed an opposition to the Motion, and on March 17, 2011, Defendants submitted reply affidavits of its counsel, and Defendant Pantanelli, in further support of the Motion.[2]

### III. RELEVANT LAW

A court "may transfer any civil action to any other district where it might have been brought" if transfer serves the "the convenience of the parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). "The moving party bears the burden of establishing that the transfer is appropriate and must establish that the alternative forum is more convenient than the present forum." *Santi v. National Business Records Management, LLC*, 722 F.Supp.2d 602, 606 (D.N.J. 2010). Accordingly, in a Section 1404(a) motion to transfer, a court must determine: (1) whether the proposed forum is one in which Plaintiff could have originally brought suit, and (2) whether transfer would be in the interest of justice and for the convenience of parties and witnesses." *Id.* (*citing Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995).

In the Third Circuit, courts do not limit "their consideration to . . . convenience of parties, convenience of witnesses, or interests of justice," but rather are instructed to employ an analysis of

---

[2] Although each side suggests that Defendants may assert a counter-claim against Plaintiff for an alleged breach of a non-compete provision contained in the Employment Agreement, the Court will not address said counter-claim because, at this point, it is purely hypothetical.

4

all "relevant public and private interests." *Santi*, 722 F.Supp.2d at 606 (*citing Jumara*, 55 F.3d at 879). The private interests may include: (1) plaintiff's forum preference; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the location of books and records. *Jumara,* 55 F.3d at 879 (citations omitted). The public interests may include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *See id.* at 879-80 (citations omitted). Courts have broad discretion in determining a Section 1404(a) motion to transfer, and are directed to consider "convenience and fairness on a case-by-case basis." *Santi*, 722. F.Supp. 2d at 606.

## IV. DISCUSSION

### A. Whether This Action Could Have Been Filed in the Proposed Forum

As stated above, "[t]he first step in a court's analysis of a motion to transfer is to determine whether venue would be proper in the proposed transferee district." *Church & Dwight v. Mayer Laboratories, Inc.*, Civ. Action No. 08-5473, 2010 WL 3907038 (D.N.J. Sept. 28, 2010). In cases where jurisdiction is based upon diversity among the parties, a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2).

Here, the Court finds that venue would be proper in Defendants's proposed forum, the Eastern District of New York. Plaintiff's claims revolve around Defendants's alleged failure to compensate Plaintiff for his Ownership Interest in Defendant Swing Staging, which is a New York

corporation. Moreover, Plaintiff's claim that Defendant Pantanelli diverted assets from Defendant Swing Staging to Defendant Twin and Swing also leads this Court to find that this action could have been filed in New York because such allegedly tortious activity likely took place in New York. *See Sam Graphics, Inc. v. Costa*, Civ. Action No. 09-3355, 2009 WL 3230888 at * 2 (D.N.J. Oct. 1, 2009). Accordingly, this action could have been filed in the Eastern District of New York because the Corporate Defendants transact business there, and a majority of the events giving rise to this action occurred in New York. Accordingly, the Court finds that Plaintiff could have filed this action in the Eastern District of New York. [3]

### B.  *Jumara* Private Interests

The parties focus their arguments on the following *Jumara* private interests: (1) Plaintiff's forum choice; (2) where the claim arose; (3) convenience of the parties; (4) convenience of witnesses; and (5) the relative ease of access to sources of proof. For the reasons articulated below, the Court finds that Defendants have met its burden of showing that the *Jumara* private interests support transfer to the Eastern District of New York.

#### 1.  Plaintiff's Forum Choice

Defendants argue that Plaintiff's forum choice is improper because none of the events giving rise to this action occurred in New Jersey, and the only connection to New Jersey was Defendant Swing Staging's purchase of Plaintiff's Former Company's assets under the APA. (Defs.'s Moving

---

[3] Nothwithstanding Plaintiff's position that the District of New Jersey is an appropriate and more convenient forum, Plaintiff concedes that "the [Eastern District of New York] may also be a potential forum." (Docket Entry No. 13, Plaintiff's Opposition to Defendants' Motion ("Pls. Opp. Br.") at 9).

Br. at 3). Plaintiff argues that his forum choice is proper and thus should not be disturbed. (Pl.'s Opp. Br. at 6; *See* Complaint at ¶ 5).

In the Third Circuit, court's consider Plaintiff's original forum choice. *Jumara*, 55 F.3d at 879. Moreover, a "[p]laintiff's choice of forum is a paramount consideration that should not lightly be disturbed." *Clark v. Burger King Corp.*, 255 F.Supp.2d 334, 338 (D.N.J. 2003). But courts in this District often give less weight to a plaintiff's forum choice when the dispute at the heart of a lawsuit occurred almost entirely in another state. *Santi*, 722 F.Supp.2d at 607.

Here, the Court finds that the District of New Jersey, Plaintiff's original forum choice, is entitled to little deference because the events giving rise to this action bear little relation to New Jersey, and occurred primarily in New York.[4] Although Plaintiff's forum choice is not improper, the Court is not persuaded by Plaintiff's attempt to tie the facts of this action to the District of New Jersey. Specifically, the Court finds that the only connection to the District of New Jersey is the APA. But Plaintiff does not allege a breach of the APA. Rather, Plaintiff alleges that he relied on Defendants's alleged misrepresentations regarding the value of Defendant Swing Staging when he sold his Former Company's assets pursuant to the APA; this conduct therefore implicates the Eastern District of New York because it looks to the conduct of New York corporations and residents. Accordingly, the Court will not afford Plaintiff's choice of venue deference because the operative facts of this action bear little connection to the state of New Jersey, and occurred primarily in New York. *See Santi*, 722 F.Supp.2d 607; *Sam Graphics,* 2009 WL 3230888 at *3.

    2.    <u>Whether the Claims Arose Elsewhere and Defendants's Preference</u>

---

[4] The Court notes that this Court is Plaintiff's original forum choice; this action was neither removed from state court, nor is there any indication that Plaintiff has filed a parallel action in another court. (*See generally* Complaint).

7

Defendants argue that Plaintiff's action arose in New York because the SRA was allegedly negotiated, executed and performed in New York. (Defs.'s Moving Br. at 3). Although Plaintiff concedes that this action focuses on the SRA, he claims that he negotiated the terms of the contract in New Jersey. Plaintiff also argues that his Fraud/Misrepresentation Claims arose in New Jersey because he relied on Defendants's alleged misrepresentations regarding the financial condition of Defendant Swing Staging when deciding to sell his Former Company's assets under the APA. (Pl.'s Opp. Br. at 6-7; Frato Cert. at ¶¶ 25-26).

The Court agrees with Defendants and finds that this action primarily arose in New York. In an action sounding in contract, the factors determining where the claim arose include where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred. *Allianz v. Bleich*, Civ. No. 08-668, 2008 WL 4852683 at * 5 (D.N.J. Nov. 7, 2008) (citing *Prudential Ins. Co. v. Figueredo*, Civ. No. 06-0693, 2007 WL 2752093 at *3 (D.N.J. Sept. 20, 2007)). Here, Plaintiff's Contract Claims allege breach of the SRA. (*See* Complaint at First Count, Second Count, and Ninth Count). In fact, Plaintiff admits that his Contract Claims are the "crux" of his action. (Pl.'s Opp. Br. at 7). Moreover, the Court also finds that that performance of, and the alleged breach, occurred primarily in New York. (*See generally* SRA). Defendants's required performance under the SRA, i.e., assigning a dollar-figure to Plaintiff's Ownership Interest, and Defendants's alleged breach, i.e., diverting assets, improper valuation, and undervaluing, likely occurred in New York. Moreover, Plaintiff's Fraud/Misrepresentation Claims, and Breach of Duty Claims, also arose primarily in New York because such claims focus on the actions of New York corporations and a New York resident. In sum, Defendant Swing Staging's regular accountant, a

resident of New York, assigned a dollar-figure to Plaintiff's Ownership Interest after analyzing a New York Corporation. (*See* SRA at ¶¶ 1-2).[5]

    3.    <u>Convenience of Parties</u>

Defendants argue that Plaintiff will only be slightly inconvenienced should the Court grant the Motion because as an employee of Defendant Swing Staging, Plaintiff regularly commuted to Queens, New York. (Def.'s Moving Br. at 5). Moreover, Defendants argue that it is more inconvenient to travel from White Plains, New York to Newark, New Jersey, than it would be for Plaintiff to travel to Brooklyn, New York.[6]

*Jumara* instructs courts to consider "the convenience of the parties by their relative physical and financial conditions." *Jumara*, 55 F.3d at 879. Defendants fail to set forth any assertion regarding their physical and financial conditions. Moreover, the Court is not persuaded by Defendants's argument with regard to travel distance. Should the Court grant the Motion, the distance from Plaintiff's residence to Brooklyn, New York is approximately the same distance as Defendant Pantanelli would travel to Newark, New Jersey. A transfer to the Eastern District of New York would therefore shift the existing minor inconvenience to Plaintiff, but it would not net greater convenience overall. *See eg., Sam Graphics, Inc. v. Costa*, 2009 WL 3230888 at *3. As such,

---

[5] The Court also notes that Plaintiff's Quantum Meruit Claim and Conversion Claims also arose in New York for the same reasons as to why Plaintiff's Contract Claims, Fraud/Misrepresentation Claims, and Breach of Duty Claims arose in New York. Moreover, there is little question that Plaintiff's Accounting Claim also arises in New York because Plaintiff alleges that he is entitled to an accounting as a part-owner of a New York Corporation.

[6] The Court notes that Defendant Pantanelli acknowledges that during Plaintiff's employment, Plaintiff complained about traveling from New Jersey to Queens, New York for work every day; as a result, Plaintiff was permitted to travel to work four, rather than 5, days a week. (Docket Entry No. 14, Pantanelli Reply Aff. at ¶ 4.

Defendants have not met their burden of showing that the Eastern District of New York is more convenient for the parties.

    4.    <u>Convenience of Witnesses</u>

Next, Defendants argue that Mr. Bianculli, Defendants's accountant who was responsible for calculating Plaintiff's Ownership Interest, would be inconvenienced should the Court deny the Motion. (Defs.'s Moving Br. at 5). Although Plaintiff does not provide the name of any potential witness (Frato Cert. at ¶ 32), the Court finds that Defendants have not persuaded the Court that this factor warrants transfer. Mr. Bianculli is located in Farmingdale, New York, which is a distance of approximately 50 miles from Newark, New Jersey. Defendants, however, do not suggest that this witness would be unwilling or unavailable to testify. Moreover, Mr. Bianculli is within this Court's subpoena power of up to a one-hundred mile radius. Fed. R. Civ. P. 45(b)(2)(B); *see Santi*, 722 F.Supp. 2d at 607 (convenience of witnesses relevant only to the extent that the witness would be unavailable for trial in one of the fora); *Jumara*, 55 F.3d at 779. Accordingly, the Court finds that Defendants have not met its burden in showing that the Eastern District of New York would be more convenient for the non-party witnesses.

    5.    <u>Access to Sources of Proof</u>

Defendants argue that the documents relevant to ascertaining the correct valuation of Defendant Swing Staging are located in Farmingdale, New York, at the location of their accountant, Mr. Bianculli's office. In the Third Circuit, courts are to inquire as to whether the files can be produced in a particular forum. *Jumara*, 55 F.3d at 779. Accordingly, the Court finds that Defendants have not their burden of showing that this factor weighs in favor of transfer to the Eastern District of New York because the predominantly documentary evidence can be copied and

produced in the District of New Jersey *See Santi*, 722 F.Supp.2d at 608 ("[w]hen documents can be transported and/or easily photocopied, their location is entitled to little weight."). As such, the Court finds that Defendants have not persuaded the Court that this factor weighs in favor of granting the Motion.

      6.      <u>Balancing the *Jumara* Private Interests</u>

In sum, application of the facts of this case to the *Jumara* private interests warrant transfer to the Eastern District of New York. Plaintiff's forum choice is entitled to little deference, and although the Eastern District of New York is not more convenient for parties and witnesses, the facts of this case primarily occurred in New York as opposed to New Jersey.

    **C.**    ***Jumara* Public Interests**

The parties dispute the following *Jumara* public factors: (1) the local interest in deciding local controversies at home; and (2) this Court's ability to apply the appropriate state law. The Court, however, acknowledges that other *Jumara* public interests are also relevant to the Court's analysis.

      1.      <u>Local Interest</u>

The parties dispute whether the Eastern District of New York or this Court has a greater interest in deciding this controversy. In this District, some courts have found that they have an interest in protecting the contractual rights of New Jersey residents. *See eg. Apollo Technologies Corp. v. CentrOsphere Indus. Corp.*, 805 F.Supp. 1157, 1186-87 (D.N.J. 2008). In contrast, other courts often look to where a substantial portion of the conduct at issue occurred in order to determine which forum has the greater interest in the outcome of the matter. *See S.O.S. Salson Inc. v. Academy Corp.*, Civil Action No. 09-2159, 2009 U.S. Dist. LEXIS 87990 at *17-18 (D.N.J. Sept. 23, 2009).

Under the facts of this case, the Court finds that this factor weights in favor of transfer. While it is true that this Court has an interest in protecting a New Jersey resident's contractual and legal rights, this action calls into question the actions of New York corporations, and their President, Defendant Pantanelli, a New York resident. Thus, this action's strong connection to New York and weak connection to New Jersey leads this Court to find that New York has the greatest interest in the outcome. Accordingly, this factor weighs in favor of transfer to the Eastern District of New York.

2. This Court's Familiarity with the Applicable Law

Defendants argue that a New York court could more easily adjudicate this matter because the SRA is governed by New York law. (Defs.'s Moving Br. at 3). Although Plaintiff does not dispute Defendants's choice-of-law contention (*see* Pl.'s Opp. Br. at 14), Plaintiff argues that this Court would not have a difficult time in applying New York law. The proximity among New York and New Jersey inevitably leads to a multitude of diversity actions in which the Court is required to apply New York substantive law. Given this Court's familiarity with New York law, and since the Court is not faced with novel or complex issues, it is confident that it is capable of properly adjudicating this matter. *See Busch v. Sea World of Ohio*, 95 F.R.D. 336, 341 (W.D.Pa. 1982). Accordingly, the Court does not find that this factor weighs in favor of transfer.

3. Practical Considerations

The Court finds that practical considerations warrant transfer. Not only does Defendants's forum choice bear the most substantial connection to the events surrounding this case, the District of New Jersey has invested few of its resources to this action. This case is in its infancy, as the Court has only conducted an initial scheduling conference and one telephonic status conference. The

discovery that the parties have conducted thus far will apply with the same force whether the parties proceed in New Jersey or New York, and the differences in costs associated with taking discovery in either jurisdiction are negligible. *See e.g., Allianz*, 2008 WL 4852683 at *6. Accordingly, the Court finds that it more practical for the parties to litigate this action in the Eastern District of New York than the District of New Jersey

    4.  Balancing the *Jumara* Public Interests

In sum, the Court concludes that the *Jumara* public interests weigh in favor of transfer. This action is more properly litigated in New York given New York's interest in this action, and other practical considerations.[7]

### V. CONCLUSION

Pursuant to 28 U.S.C. § 1404(a) and applicable case law, and for the reasons articulated above, the Court hereby GRANTS Defendants's Motion to transfer venue to the United States District Court for the Eastern District of New York. An appropriate order shall follow.

s/ Esther Salas<br>
ESTHER SALAS, U.S.D.J.

---

[7] The Court notes that Plaintiff has not advanced any argument that he would have a difficult time in enforcing a judgment should the matter be transferred. Morever, the Court conducted independent research on the issue of court congestion, and finds that this factor does not support either party. For instance, in 2010, the number of civil cases over three years old in the Eastern District of New York was 1,224, or 16% of its total caseload. That same figure for the District of New Jersey was 308 cases, or 5.1%. On the other hand, the median time for civil cases to go from filing to trial is slightly longer in New Jersey. *See* www.uscourts.gov. Therefore, the factor of Court Congestion does not decisively favor either party. *See e.g., Johnson v. Nextex*, Civ. Action No. 06-5547, 2007 U.S. Dist. LEXIS 70926 at *13-14 (D.N.J. Sept. 21, 2007)(different figures can be used to make different arguments).